McCALEB, Justice.
 

 On March 26, 1947, Inland Waterways Corporation,
 
 [1]
 
 which operates the Federal Barge Lines, entered into a labor contract with International Longshoremen’s and Warehousemen’s Union, C.I.O., wherein it agreed, among other' things, to recognize the Union as its sole and exclusive collective bargaining agency for all employees of the terminals at Baton Rouge and New Orleans, Louisiana; Vicksburg, Mississippi; Helena, Arkansas and Mobile, Alabama, and to give preference in employment within certain limitations to employees who are members of the Union in good standing. It- was provided that the agreement would become effective on its date and would remain in force until June 30, 1947, “and thereafter from year to year unless either party gives thirty • (30) days written notice of a desire to alter it.” The contract was supplemented on two separate occasions so as to raise the wage scale of employees at the terminals.
 

 On August 13, 1947, the Corporation had in its employ nine Union watchmen covering its Upper and Lower Fleets and the Galvez Street Wharf in the city of New Orleans.. Having previously decided to discontinue direct employment of watch-
 
 *673
 
 mien and to let out this work to an independent contractor, the Corporation notified each of the nine Union watchmen in writing that, after September 13, 1947, his services as watchman would be terminated and that, should he so desire, he would be reassigned as a laborer, effective September 14, 1947, according to seniority.
 

 The affected employees complained to the Union and the latter protested to the Corporation, contending that the proposed discontinuance of direct employment of watchmen was a violation of the contract. Notwithstanding these objections, the Corporation carried its plan into effect and, on September 14, 1947, it entered into a contract with Lehon’s Protection Police Service, Inc., to provide the necessary watchman service for its Upper and Lower Fleets and its Galvez Street Wharf.
 

 However, prior to the time the employment was terminated, viz., on September 12, 1947, the aggrieved watchmen and the Union filed this suit in the Civil District Court seeking to restrain and prohibit the Corporation, its officers and agents, from terminating their employment as watchmen and a mandatory injunction directing their reemployment in the event of their discharge subsequent to the filing of the suit.
 

 A rule nisi was issued by the court and, on the return day, the Corporation appeared and resisted the demand on two grounds: (1) That plaintiffs are not entitled to injunctive relief because they have not alleged injury not compensable in damages, and (2) that, in any event, the acts complained of are not violative of the contract.
 

 After a hearing, there was judgment in favor of the Corporation and plaintiffs’ suit was dismissed. They have appealed devolutively and the case has been submitted for decision on briefs by joint motion of the parties under the provisions of Section 8 of Rule IX of this Court.
 

 An examination of the record and the briefs of the litigants makes it unnecessary that we determine whether plaintiffs have an' adequate remedy at law, inasmuch as we are convinced that the action taken by the Corporation in discontinuing direct employment of watchmen is not violative of its contract with the Labor Union. A perusal of the agreement reveals that, aside from certain covenants respecting general working conditions, leaves of absence, seniority, grievances and the like, it is nothing more than a preferential employment arrangement under which the Union is recognized as the sole and exclusive collective bargaining agency- to supply the Corporation’s employment needs:
 

 “(b) Insofar as consistent with legislation, directive, regulations or Federal Personnel policies, now or hereafter in effect, * * *
 
 ff
 

 It should be borne in mind, at the outset, that the Inland Waterways Cor
 
 *675
 
 poration is a creature of Congress and, hence, is controlled by such legislation, directives and regulations as the Federal Government sees fit to impose.
 
 [2]
 
 The agreement with the Labor Union fully recognizes the limited contractual powers of the Corporation for it is made “Subject to the laws of the United States of America (including Section 305 of the Government Corporations Appropriations Act of 1947, 60 Stat. 586,) and authorized directives of agencies of the United States in conformity with the laws of the United States, now or hereafter in effect, * *
 

 The contract does not require the Corporation to continue in its employment a certain number of Union employees or a particular class of employee. Therefore, it was within its rights when it discontinued direct employment of watchmen and hired an independent contractor to supply it with watchman service. ' Witnesses produced by the Corporation testified that it dispensed with direct employment of watchmen for reasons of economy and efficiency and that the expected savings accruing to it by the change would amount to $7,496.58 per annum.
 

 The policy of economy is in keeping with the laws of the United States applicable to the contract involved — for Section 947(a) of Title 5, U.S.C.A., dealing with executive departments and government officers and employees, provides :
 

 “It is declared to be the sense of the Congress that in the interest of economy and efficiency the heads of departments, and of independent establishments or agencies, in the executive branch, including Government-owned or controlled corporations, shall terminate the employment of such of the employees thereof as are not required for the proper and efficient performance of the functions of their respective departments, establishments, and agencies.”
 

 Counsel for plaintiffs does not for a moment contend that there is an express provision in the contract which requires the Corporation to retain the watchmen on its payroll during the existence of the agreement. Nor does he assert that Le-hon’s Protection Police Service, Inc., is not an independent contractor or that its employees are subject to the supervision and control of the Inland Waterways Corporation. He takes the position that the substitution of an independent contractor in the place of the watchmen constitutes an actionable violation because a consideration of the contract as a whole exhibits that it was the intention of the parties that the services of employees were not to be discontinued while the agreement was in force unless the service rendered by such employees was also discontinued. In other words, it is counsel’s contention that the hiring by the Corporation of an independ
 
 *677
 
 ent contractor to perform the watchman service is merely a device, by which an avoidance of the implied provisions of the contract is effected, which cannot be countenanced in equity.
 

 In support of this proposition, .counsel relies on several provisions of the contract fixing the scale of wages, tour of duty, overtime, and other related matters and also on Section 6 of Article II, dealing with “General Working Conditions,” which declares :
 

 “Established positions shall not be discontinued and new ones created under a different title covering relatively the same class of work, for the purpose-of reducing the rate of pay or evading the application of seniority rules or other conditions of work set forth in this Agreement. * * * ”
 

 The contention cannot be sustained. We do not view the contract as restricting in any manner the liberty of the Corporation to discontinue direct employment for any work in which it is engaged and to let out such work or any part thereof to an independent contractor. For instance, if the Corporation should find it more suitable to hire a stevedoring company to load and unload its barges rather than to continue performing this work itself through its own employees, there is nothing in the agreement, express or implied, to prevent it from so doing. The contract merely vests the Union with the exclusive right of supplying the labor needs of the Corporation from its membership.
 

 Nor do we think that the provisions of Section 6 of Article II of the contract enhance plaintiffs’ case to any extent. That .section, in effect, forbids an unfair labor practice — that is, the discontinuance of established positions and creation of new ones under a different title for the purpose of reducing the pay rates and evading seniority rules. Nothing of such a nature has been attempted by the Corporation in this case.
 

 The judgment appealed from is affirmed.
 

 [1]
 

 Owned by tbe Federal Government, being created by Act of Congress of June 3rd 1924, 43 Stats. 360, 49 U.S.C.A. 151 et seq.
 

 [2]
 

 It is not amenable to the Taft-Hartley Act. Act of June 23rd 1947, C. 120, Title I,
 
 § 101, 61
 
 Stat. 137, Title 29, U.S. G.A. § 152, exempts from the.term “employer” “any wholly owned Government Corporation, * * * ”