AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, DIVISION 1326, Appellant,

v.

The GREYHOUND CORPORATION, Florida Greyhound Lines Division, Appellee.

No. 15772.

United States Court of Appeals Fifth Circuit.

April 18, 1956.

Edwin C. Coffee, Jr., Coffee & Coffee, Jacksonville, Fla., for appellant.

Wayne K. Ramsay, A. Y. Milam, Jacksonville, Fla., for appellee, Milam, McIlvaine, Carroll & Wattles, Jacksonville, Fla., of counsel.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

The sole question presented by this appeal is whether under the collective bargaining agreement entered into between the parties the employer has the right to lay off a group of janitorial employees covered by the agreement and hire the services of an independent contractor in their place. The issue was submitted to the district court on motions for summary judgment made by both the company and the union, supported by several exhibits and the affidavits of the company's president and the union's president. Concluding that there is no implied prohibition in the agreement against the company's subcontracting the work in question, the district court granted the company's motion for the declaratory relief prayed. We are of the view that the judgment must be affirmed.

The evidence shows that on August 19, 1953, the company and the union entered into a collective bargaining agreement covering the company's bus drivers and nonmanagerial terminal employees at terminals in eleven Florida cities. The agreement by its terms is to remain in effect until June 30, 1956, with automatic annual extensions thereafter except where either party gives 60-day written notice of termination. The agreement expressly recognizes the union as the sole collective bargaining

representative for both drivers and terminal employees, and further classifies the latter as ticket agents, starters, information clerks, baggage and express clerks, and porters and maids.

On November 11, 1954, the company entered into a contract with Floors, Inc., an independent contractor, whereby the latter was to perform janitorial and maid services at the company's Jacksonville terminal, which is covered by the agreement. On the next day it notified the porters and maids at the terminal that effective November 28, 1954, the date that Floors, Inc. was to commence working under the contract, they would be laid off. The union thereupon notified the company that if the porters and maids were laid off and the work given to Floors, Inc., it would treat the lay-off as a breach of the collective bargaining agreement, releasing it from the no-strike clause included therein; and further, that in the event of such a lay-off, it would call a strike of both the drivers and the terminal employees. The company then, pursuant to prior agreement with Floors, Inc., postponed the effective date of the contract between these two parties, and brought the present action for a judgment declaring its rights under the collective bargaining agreement.

The agreement is silent on the precise question in issue. It provides for the exercise of seniority rights in case of "reduction in forces," but nowhere defines this term or declares when such reductions are justified. On the other hand, there is no provision in the contract which may be construed as an explicit authorization for this action on the part of the employer.

The company argues that the contracting out of some of its work is one of the rights which an employer possesses as inherent in the managerial function, and that although these inherent rights may be contracted away by the company, it retains them in the absence of any express provision to that effect. It also urges that the inclusion of certain provisions in the contract granting rights to employees in situations roughly analogous to this one is inconsistent with the union's argument that there is an implied term in the agreement not to contract out any of the work covered by it. Thus, the provision that where any buses which the company rents are already manned by drivers, union drivers will accompany them as conductors, is said to weigh against the union's interpretation of the agreement.[1]

The union argues that the recognition in the contract that there will be reductions in forces means only reductions to a point less than completely eliminating all the jobs in a classification, since to rule otherwise would allow the destruction of part of the very subject matter of the agreement. The union further contends that it is a fundamental principle that if one confers a right on another, he impliedly agrees not to act so as to make impossible the exercise of that right; therefore, it would be unreasonable to assume that the parties would make an agreement carefully setting forth the terms of the porters' and maids' employment if they have no right to employment even as long as the company has jobs to offer.

■ In prior rulings on the question, the cases are heavily on management's side. It is settled Florida law that if an employer discontinues a part of his business he is under no duty to pay wages to those workers left jobless by the change. Division No. 1344 of Amalgamated Ass'n of St. Elec. Ry. and Motor Coach Employees of America v. Tampa Elec. Co., Fla., 47 So.2d 13. The un-

---

1. The agreement provides: "Section 2. Rented Equipment. (a) If it becomes necessary for the Company to rent buses to cover schedules, or any additional sections to schedules, and it is unable to secure such equipment without taking drivers of the rentor, the drivers ordinarily assigned to such schedules will accompany these buses as conductors and will receive their regular rate of driving pay. This section does not apply to buses rented from associated Greyhound Companies or to any pooling arrangements."

ion argues that this situation is distinguishable from the case at bar, where the operation was not suspended but was merely transferred to a third party. However, other cases more directly in point with the instant situation hold that the type of limitation on management's freedom of operation urged here will not be implied merely from the fact that the parties agreed on terms and conditions covering the jobs in question. In International Longshoremen's and Warehousemen's Union v. Inland Waterways Corporation, 213 La. 670, 35 So.2d 425, the corporation laid off nine union watchmen and contracted with Lehon's Protection Police Service, Inc. for the same service. The watchmen and the union sued to restrain the corporation from making the lay-off, and the Supreme Court of Louisiana, observing that the contract did not contain an express provision requiring the retention of watchmen on the payroll, refused to infer such a term, and upheld the dismissal of the suit. Similarly, in Local Union No. 600, etc., v. Ford Motor Co., D.C.E.D.Mich., 133 F.Supp. 834, it was held that there was no implied provision in the United Auto Workers' contract with the Ford Motor Co. forbidding the company from transferring or contracting out any operations at the company's River Rouge plant.

■ The union contends that the latter case is distinguishable from this one by the presence in the UAW-Ford agreement of a broadly-phrased management prerogatives section. While we may agree that this section strengthened the company's position there, we cannot concede that the absence of such a provision would work a different result. So to hold would be to find an implied term in every collective bargaining agreement that employees have inherent rights to retain their jobs, except where the contrary is expressly provided for. We cannot accept this theory any more than we can accept the employer's argument that it has inherent rights affecting the employment relationship. Lest our use of the term "inherent rights" be misconstrued, we make it plain that the relation of employer and employee is one of contract. What is within the terms of the contract is governed by it. What is without the terms of the contract is unaffected by it. Both the employer and the employee have complete freedom of action in this unaffected field. To the extent that this amounts to an "inherent right," it inheres equally in each party to the contract.

For this reason, the company was not limited in the manner in which it could reduce forces, the right to reduce them not being negatived, but in fact being recognized at several places in the agreement. The union contends that this recognition cannot cover a reduction to zero, but if this contention is correct, the company has no right to discontinue completely a branch of its business, a point which has been already settled to the contrary. The argument that the jobs are the very subject matter of the agreement only states a conclusion, and is inaccurate to the extent that it assumes that all terms and conditions of work are covered in the contract. The contention that he who creates a right agrees not to act so as to make impossible the exercise of the right assumes the creation of the right, which is the very point in issue.

■ Therefore, the union's interpretation of the contract cannot be supported by reference to its express terms or any reasonable implications therefrom, nor can we accept any theory that there are inherent rights possessed by employer or employees outside the common law and statute and antedating the negotiation of any contractual provision on the question. We must conclude that if the parties intended to create any rights in the event of a contracting out of part of the business, as, for example, they did with regard to the rental of buses, they would have included a provision on that subject in the agreement. In the absence of such a term, we must regard the company's contract with Floors, Inc. as no breach of its collective bargaining agreement with the union.

The judgment is

Affirmed.